**Jack F. HELMCAMP, Appellant,**

**v.**

**INTERFIRST BANK WICHITA FALLS, N.A., Appellee.**

**No. 2–84–147–CV.**

Court of Appeals of Texas, Fort Worth.

March 7, 1985.

Law Offices of Ron L. Yandell, Suzan Redmond, Wichita Falls, for appellant.

Gibson & Hotchkiss, J. Keaton Grubbs and Frank D. Trotter, Wichita Falls, for appellee.

Before HUGHES, JORDAN and JOE SPURLOCK, II, JJ.

OPINION

JOE SPURLOCK, II, Justice.

This case involved a suit on a promissory note. The appellee, InterFirst Bank of Wichita Falls, N.A., filed suit against appellant, Jack F. Helmcamp, and A. Lynn Castle alleging joint and several liability on a promissory note executed on November 17, 1981. The Bank was granted summary judgment against both Helmcamp and Castle, jointly and severally. Helmcamp was further granted judgment over against

Castle. Castle has not appealed from the judgment.

We reverse and remand.

■ Helmcamp raises three points of error. Points of error one and two contend that the court erred in granting summary judgment in that a genuine issue of fact exists as to his affirmative defenses. Point of error three contends that a genuine question of fact exists as to his existence as an accomodation party. We will only address Helmcamp's points of error one and two as his existence as an accommodation party would not act to discharge his liability on the note. TEX.BUS. & COM. CODE ANN. sec. 3.415 (Vernon Supp. 1985). *See Reed v. Buck*, 370 S.W.2d 867 (Tex.1963).

In point of error one, Helmcamp contends that the court erred in granting summary judgment against him on the note in that the Bank did not establish its cause of action as a matter of law as a genuine question of fact exists as to the affirmative defenses established by him. Point of error two is that a genuine question of fact exists as to whether Helmcamp waived his affirmative defenses against liability on the promissory note. We agree with both of his contentions.

■ It is well settled that "[t]o be entitled to a summary judgment, the movant has the burden of establishing that there exists no material fact issue and that he is entitled to judgment as a matter of law." *Town North National Bank v. Broaddus*, 569 S.W.2d 489, 494 (Tex.1978). Standing alone, the Bank's pleadings, motions and supporting proof would entitle it to the judgment rendered and Helmcamp does not contend otherwise. However, he does contend that he asserted affirmative defenses which raised genuine questions of fact. His answer to the motion for summary judgment asserted the affirmative defenses of fraud, duress, wrongful inducement and lack or failure of consideration. In order to avoid summary judgment, Helmcamp had the burden to show the existence of an

issue of fact with respect to his affirmative defenses. *Id.* at 494.

The parol evidence rule excludes evidence to vary the terms of a written contract. One exception to this rule permits the admission of extrinsic evidence to show that the execution of a note was procured by fraud. *Viracola v. Dallas International Bank*, 508 S.W.2d 472, 474 (Tex.Civ.App. —Waco 1974, writ ref'd n.r.e.). In order for Helmcamp to gain the benefit of such exception, it was incumbent on him to show some type of trickery, artifice, or device employed by the Bank in addition to the showing that the Bank represented to him that he would not be liable on such note. *Town North National Bank*, 569 S.W.2d at 494. We believe that the summary judgment proof offered by both parties accomplished this and that Helmcamp comes within this exception.

The summary judgment proof, offered to the court, established the following: The Bank brought suit on a note executed on November 17, 1981, by both Helmcamp and Castle. This note was the fifth renewal on a note executed on December 31, 1979. This note was signed by Helmcamp as a maker of the note and co-signed by Castle. The 1979 note was for the principal sum of $55,000 and was unsecured. It is undisputed that the alleged purpose of the funds were for the purchase, by Castle, of a farm and that he needed to do so immediately. Helmcamp did not receive any of the proceeds from this loan, and had no relationship with Castle otherwise. No payments were made on the note, Castle disappeared, and Helmcamp claims that he renewed the notes under duress.

The affidavit of Helmcamp establishes that he was approached by Gene Pullam, an officer of the Bank and longtime friend, to cosign the note with Castle for a short period of time. The Bank wanted to loan the money to Castle, and it would help the Bank for Helmcamp to co-sign. Pullam represented to Helmcamp that Castle had funds coming in which would cover the note before the note would become due. The day before Helmcamp signed the note,

Pullam told him: "You will not lose a penny, and so you get down there and sign that note in the morning." The affidavit of Celeste Mills also recites this statement by Pullam and further states that it was in the form of a command made by Pullam to Helmcamp. Helmcamp felt as though he was under duress from the Bank, with whom he had long been associated, to sign this note. Helmcamp never had any discussions with Castle about signing the note.

Helmcamp's affidavit shows that when he went to sign the note, Dean Swinney, a loan officer, told him he would have to sign as the maker. Swinney delivered to Helmcamp a financial statement of Castle. Helmcamp states that he assumed the statement was accurate and that the Bank would have checked it out and would not have encouraged him to sign the note if the statement were not believable and worthwhile. He claims he relied on the statement in signing each of the notes in question. He further states that Castle was not present at the bank when he signed the note. His affidavit also alleges private dealings between Pullam and Castle.

The affidavit of Pullam reveals that he personally loaned Castle $7,000, interest free, sometime later in January, 1980. Pullam said he made other advances to Castle and eventually received back $9,500 from Castle sometime in late 1981. Helmcamp's affidavit states that he never learned of these dealings until Pullam was deposed, prior to trial. He questions whether Pullam was in fact repaid for a personal loan to Castle, or whether Pullam was getting a commission from Castle for inducing Helmcamp to sign the notes. Helmcamp further states that if he had known that the financial statement was inaccurate or of these private dealings it would have affected his decision.

We find a fact question exists of whether or not Helmcamp was induced solely by the actions of Pullam to sign the note of December 31, 1979, there being no other connection between Helmcamp and Castle. Such a finding is uncontradicted by any evidence before the trial court or presented to this court on appeal. The affidavits of Helmcamp and Mills raise a genuine issue of fact as to whether Pullam represented to Helmcamp that he, Helmcamp, would not be liable on the note. The existence of dealings between Pullam and Castle when coupled with the misrepresentation of Castle's financial ability, as evidenced by the financial statement, raises a genuine issue of fact as to the existence of trickery, artifice or device used on behalf of the Bank in inducing Helmcamp to sign the note. The summary judgment proof, if true, satisfied all of the elements of fraud. *Albritton v. Henry S. Miller Co.*, 608 S.W.2d 693, 695 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). The facts of this case spotlight the issue of the propriety of a bank seeking out and inducing a long-time good customer into guaranteeing that bank's imprudent loans to a questionable customer. This practice is especially questionable, perhaps fraudulent, when there is no benefit shown to pass to the long-time good customer, nor any connection existing between the customers. There is certainly a question of fact to be determined by the trier of fact as to the existence of trickery, artifice or device used to secure the "borrowers" signature.

We believe that our decision is in line with both *Berry v. Abilene Savings Association*, 513 S.W.2d 872 (Tex.Civ.App.—Eastland 1974, writ ref'd n.r.e.) and *Viracola*. We find no distinguishable difference between those cases and the present case. We further find that if Helmcamp was fraudulently induced to sign the original note then an issue of fact arises whether or not a waiver occurred through signing the renewals. A genuine issue of fact exists as to waiver, as waiver is a matter of intent. *Viracola*, 508 S.W.2d at 474. We sustain Helmcamp's points of error one and two.

We reverse the trial court's granting of summary judgment in favor of the Bank and remand the case to the trial court for further proceedings.